## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

**TAVA MARTIN,** individually, and on behalf
of others similarly situated,

       Plaintiff,

vs.

**BANK OF AMERICA CORPORATION**, a
Delaware Corporation,

       Defendant.

---

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND RELIANCE ON JURY DEMAND

Plaintiff, TAVA MARTIN ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Class/Collective Action Complaint against Defendant BANK OF AMERICA CORPORATION ("Defendant"), and states as follows:

### INTRODUCTION

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for common law claims of breach of contract and unjust enrichment.

2.     Defendant requires no introduction as it is "one of the world's leading financial institutions, serving individuals, small- and middle-market businesses, large corporations, and governments with a full range of banking, investment management and other financial and risk management products and services."[1]

---

[1] *See* https://about.bankofamerica.com/en/our-company (last accessed on 9/23/2025).

1

3.     This lawsuit entails unpaid wage claims from hourly "Business Analysts" (referred to herein as "BZAs") who are required to engage in a cumbersome computer bootup and shutdown process off-the-clock before and after their scheduled shifts, as well as upon returning from their unpaid lunch breaks.

4.     The U.S. Department of Labor ("DOL") has recognized that in the context of call center type jobs, like those held by BZAs, the positions are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

5.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

6.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

7.     Given the DOL's express guidance on this issue, Defendant's violations of the FLSA were clearly willful or negligent. Either Defendant did not bother to determine whether time spent loading and logging into computer systems was compensable, or Defendant knew the time was compensable but nonetheless failed to pay BZAs for this time.

8.     Defendant requires its BZAs to routinely work a full-time schedule, plus overtime,

2

however, Defendant does not compensate BZAs for all work performed.

9. Defendant requires its BZAs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

10. This policy results in BZAs not being paid for all time worked, including overtime.

11. In the course of performing their job responsibilities, Defendant's BZAs use various computer networks, software programs, applications and phone systems.

12. The time BZAs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the BZAs' work, and they cannot perform their jobs effectively without them.

13. Defendant's BZAs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

14. Upon information and belief, Defendant's BZAs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

15. Plaintiff seeks to represent in this action all current and former BZAs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

16. Defendant knew or should have known how long it takes BZAs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiff and the putative Collective and Class for this work, but did not.

17. Defendant knew or should have known that BZAs, including Plaintiff, worked overtime hours for which they were not compensated.

18. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective

3

and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make her, the Collective and Class whole for damages they suffered, and to ensure that she and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

19.     This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

20.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

21.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the lawsuit arises between citizens domiciled in different states.

22.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

23.     This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

24.      Upon information and belief, Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

25.     Defendant's BZAs, including Plaintiff, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of

4

their job duties.

26.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

27.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

28.     This Court has personal jurisdiction over Defendant because it conducts business within the state of North Carolina, is registered with the state of North Carolina, headquartered in North Carolina, and employs individuals within the state of North Carolina.

29.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of North Carolina, has established minimum contacts sufficient to confer jurisdiction over it and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant is subject to the Court's personal jurisdiction.

## PARTIES

31.     Plaintiff Tava Martin ("Plaintiff") is a Florida resident who worked for Defendant as a BZA on a hybrid schedule, meaning she worked remotely and in Defendant's Jacksonville Florida facility, within the last two years.

32.     Defendant paid Plaintiff for her services through a third-party staffing company in

5

the form of an hourly wage, for all credited hours worked, most recently at the rate of $46.17 per hour.

33.     Plaintiff signed a consent to join this collective action lawsuit which is attached hereto. *See*, Exhibit 1, Martin Consent to Join.

34.     Defendant is a North Carolina Corporation that is registered to do business in North Carolina and maintains a registered agent office at 160 Mine Lake Ct., Ste. 200, Raleigh, North Carolina 27615.

## GENERAL ALLEGATIONS

35.      Defendant employed Plaintiff as a hybrid BZA from Plaintiff's Florida home office and Defendant's Jacksonville, Florida facility in the last two (2) years.

36.     Defendant's BZAs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before taking or making phone calls; (b) taking in-bound from and making out-bound calls to Defendant's business customers (e.g. brokerage firms); (c) ensuring that every call is documented and accounted for in Defendant's systems; and (d) logging out of the computer software programs and applications.

37.     For example, in her role as a BZA for Defendant, Plaintiff was required to make outbound calls to business customers to collect information needed for reporting to state and federal regulatory agencies and for accepting inbound calls from business customers providing information or who had questions regarding the information requested.

38.     Many of Defendant's BZAs, including Plaintiff, were employed by Defendant through third party staffing agencies.

39.     Defendant required all BZAs, including those obtained through staffing agencies,

to comply with all of the employment policies set forth in its Bank of America employee handbook, including its attendance, timekeeping, and overtime policies.

40.     Prior to being hired, Plaintiff was interviewed by one of Defendant's Hiring Managers.

41.     If Defendant deemed a BZA candidate acceptable, upon hire, BZAs are assigned to a "Manager" that is directly employed by Defendant. For example, Plaintiff was assigned to Shannon Wallace (Shannon.wallace@bankofamerica.com).

42.     At all relevant times, Defendant provided "Supervisors" and Managers who oversaw the day-to-day performance of the BZAs' job duties and provided them with training, instruction, and technical support regarding the performance of their job duties.

43.     Specifically, Defendant trained and instructed BZAs on how to use the computers systems that were integral and indispensable to the performance of their job duties.

44.     Additionally, Defendant exercised control over the work schedules of BZAs.

45.     Defendant likewise retained the ability and exercised its ability to discipline and terminate the employment of BZAs.

46.     Defendant's BZA jobs are hourly, non-exempt positions with rigid schedules that require BZAs, including Plaintiff, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

47.     These schedules result in BZAs routinely working overtime on a weekly basis.

48.     Indeed, throughout her employment with Defendant, Plaintiff was required to work a substantial amount of unpaid time, including overtime, as part of her role as a BZA.

49.     To limit labor costs, Defendant (through its policies and management) discouraged Plaintiff and the other BZAs from reporting overtime hours worked.

7

50.     Moreover, Defendant discouraged Plaintiff and other BZAs from reporting any time outside their scheduled shifts. This fact is supported by Plaintiff's pay statements that routinely reflect exactly 40 hours of work in a week. Alternatively, if Plaintiff missed a day of work, the paystub would reflect exactly 32 hours of work.

51.     As stated above, at all relevant times, Defendant controlled its BZAs' work schedules, duties, protocols, applications, assignments and employment conditions.

52.     Defendant was also responsible for training and continuing its BZAs' education in their role as BZAs.

53.     Defendant's BZAs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

54.     These programs, applications and systems are integral and an important part of the BZAs' work, and they cannot perform their jobs without them.

55.     Defendant's BZAs all follow the same or a similar timekeeping process, are subject to the same relevant timekeeping and attendance policies (many of which are contained in Defendant's employee handbook) and are subject to quality assurance reviews based on the same or similar criteria from Defendant's management.

56.     Plaintiff has attended training and meetings with numerous other BZAs on these matters and is thus familiar with their employment settings.

57.     Defendant expressly instructs and trains BZAs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can begin taking and making phone calls.

58.     Defendant furthermore enforces its policy of requiring all computer networks, programs and applications to be open and ready at the commencement of a BZA's shift, and

critically, before the BZAs clocks in, through its performance metrics and written policies regarding attendance and schedule adherence.

59.     More specifically, being clocked in but unavailable to take or make calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

60.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

61.     Because BZAs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

62.     Thus, the hours reflected on the BZAs' pay stubs are inaccurate and contrived by Defendant.

63.     In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their BZAs for no less than twenty (20) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

64.     This time could easily be recorded, accounted for and paid, but for Defendant's chose not to credit such time as time worked.

### A.      Pre-Shift Off-the-Clock Work

65.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's BZAs perform pre-shift work tasks for which they are uncompensated.

66.     Pursuant to Defendant's policies, training and direction, Defendant's BZAs are required to start up and log into various secure computer programs, software programs, networks, and applications in order to perform their jobs.

9

67.     Establishing a connection to some of these systems and networks requires a dual-authentication process in which BZAs must request a code, retrieve the code, input the code, and wait for a connection to be established.

68.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging fifteen (15) to thirty (30) minutes per day, and the tasks can take longer if BZAs experience technical problems with the computer, software, and/or applications.

69.     Prior to the commencement of each scheduled shift, Plaintiff, as well as the other BZAs, were required to complete the following tasks or tasks substantially similar to the tasks below: (a) turn on their computer; (b) wait for windows to load and log-into Windows; (c) open an application on their cell phone and request a token to access Defendant's virtual private network (VPN); (d) once the token is received, log-into Defendant's VPN and wait for a connection to be established; (e) open required web-based applications and/or websites, many of which required usernames and passwords; and (f) download various Excel spreadsheets required to perform our job duties.

70.     The aforementioned tasks are an integral and essential aspect of a BZA's job duties and responsibilities, as BZAs must have all the above-mentioned computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls or make outgoing calls at the start of their scheduled shift.

71.     Yet, Defendant fails to compensate BZAs for these computer boot up tasks.

72.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay BZAs for no less than fifteen (15) minutes per day of work performed in connection with the above pre-shift activities.

10

## B. Meal-Period Off-the-Clock Work

73. Defendant provides their BZAs with one unpaid lunch break per shift.

74. However, Defendant routinely requires BZAs to perform work during their unpaid lunch breaks.

75. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

76. Defendant does not provide BZAs with a bona fide meal period because its policies and procedures require BZAs to return from their lunch early to perform at least part of the boot up process outlined above.

77. Many of the systems used by BZAs automatically disconnect due to idleness or otherwise become disconnected, thus, requiring some of the bootup process to again be performed off-the-clock.

78. BZAs spend approximately three (3) to five (5) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when BZAs are required to do a complete reboot.

79. Defendant's management is aware that Plaintiff and other BZAs perform these tasks off the clock, and could have paid BZAs for this time, but did not.

11

### C. Post-Shift Off-the-Clock Work

80.    Pursuant to Defendant's policies, training and direction, Defendant's BZAs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts and securely shutdown the computer.

81.    The shutdown and logout process requires another two (2) to three (3) minutes of off the clock work per shift.

82.    Pursuant to Defendant's policies, training and direction, Plaintiff and the other BZAs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call. However, as outlined above, Defendant discourages or prohibits BZAs from reporting time outside of their scheduled shifts, which results in the shutdown and logout process occurring off-the-clock.

83.    Defendant did not compensate BZAs for all the time spent shutting down and logging out of their essential work systems.

84.    The unpaid off-the-clock work performed subsequent to each shift by Plaintiff and all other BZAs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as BZAs.

### D. Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

85.    An example of specific workweek where Defendant failed to pay Plaintiff all overtime due for hours worked as a BZA in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 03/11/2024 to 03/17/2024

- Plaintiff was paid at a rate of $46.17 per hour for the 40 regular hours, but no overtime wages.

- With unpaid pre-shift, meal-period, and post-shift time of no less than twenty (20) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional one hundred (100) minutes at her overtime rate of $69.25 per hour during this workweek.

86. As another example of specific workweek where Defendant failed to pay Plaintiff all overtime due for hours worked as a BZA in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 02/12/2024 to 02/18/2024

- Plaintiff was paid at a rate of $46.17 per hour for the 40 regular hours, but no overtime wages.

- With unpaid pre-shift, meal-period, and post-shift time of no less than twenty (20) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional one hundred (100) minutes at her overtime rate of $69.25 per hour during this workweek.

87. As another example of specific workweek where Defendant failed to pay Plaintiff all overtime due for hours worked as a BZA in excess of forty (40) hours, as mandated by the FLSA, includes the following:

### Pay Period of 07/22/2024 to 07/28/2024

- Plaintiff was paid at a rate of $46.17 per hour for the 40 regular hours, but no overtime wages.

- With unpaid pre-shift, meal-period, and post-shift time of no less than twenty (20) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional one hundred (100) minutes at her overtime rate of $69.25 per hour during this workweek.

88. As an example of specific workweek where Defendant failed to pay Plaintiff all straight time due for hours worked as a BZA, includes the following:

### Pay Period of 02/19//2024 to 02/25/2024

- Plaintiff was paid at a rate of $46.17 per hour for the 32 regular hours she was credited for working.

13

- With unpaid pre-shift, meal-period, and post-shift time of no less than twenty (20) minutes per shift, at five shifts per week, Plaintiff should have been paid an additional one hundred (100) minutes at her regular rate of $46.17 per hour during this workweek.

89. Defendant used the above-described common plan and policy to avoid properly compensating other similarly situated BZAs who routinely worked over forty hours or more per week.

90. The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

**E.** **Defendant Benefitted From the Uncompensated Off-the-Clock Work**

91. At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiff and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by BZAs.

92. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their BZAs.

93. At all relevant times, Defendant was able to track the amount of time BZAs spent in connection with the pre-shift, meal-period and post-shift activities.

94. Defendant failed to do so and failed to compensate BZAs for the off-the-clock work they performed.

95. At all relevant times, BZAs were non-exempt hourly employees, subject to the requirements of the FLSA.

96. At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the BZAs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

97. Defendant expressly trained and instructed BZAs to perform the above-described

14

pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take or make calls (i.e., were "phone ready") the moment their shifts began.

98.     At all relevant times, Defendant's policies and practices deprived BZAs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

99.     Because Defendant's BZAs typically worked forty (40) hours or more in a workweek, Defendant' policies and practices also deprived them of overtime pay in many workweeks.

100.    Defendant knew or should have known that the time spent by BZAs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

101.    In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

102.    In light of the fact that Defendant has faced factually similar lawsuits from other employees regarding the time spent loading and logging into computer systems, there is no conceivable way for Defendant to establish that they acted in good faith.

103.    Despite knowing BZAs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered or permitted it to happen.

104.    Unpaid wages related to the off-the-clock work described herein are owed to BZAs at the FLSA mandated overtime premium of one and one-half their regular hourly rate because BZAs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

105.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

*All current and former remote hourly-paid Business Analysts ("BZAs") who worked for Defendant at any time during the three years preceding the order conditionally certifying the proposed FLSA Collective through judgment*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

106. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated BZAs.

107. Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

108. Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

109. Defendant assigned and/or was aware of all of the work that Plaintiff and the members of the FLSA Collective performed (including the off-the-clock work explained herein).

110. As part of their regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a. Willfully failing to pay their employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

    b. Willfully and routinely compensating Plaintiff and the FLSA Collective based on scheduled hours, rather than hours worked; and

    c. Willfully failing to record all of the time that their employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

16

111. Defendant is aware or should have been aware that federal law requires them to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

112. Indeed, in light of the DOL's guidance (cited above) and the multitude of courts that have held computer boot up time is compensable, no legitimate argument can be made that Defendant's violation of the FLSA was not willful, or at a minimum, reckless.

113. Defendant's unlawful conduct has been widespread, repeated and consistent.

114. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b).

115. The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

116. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

117. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

118. Many similarly situated current and former BZAs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119. Court-supervised notice of this lawsuit should be sent to the FLSA Collective

pursuant to 29 U.S.C. § 216(b).

120.     Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

121.     Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

122.     The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 FLORIDA CLASS ACTION ALLEGATIONS

123.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former remote hourly-paid Business Analysts ("BZAs") who worked for Defendant at any time in Florida during the three years preceding the filing of this motion through judgment*

(hereinafter referred to as the "Rule 23 Florida Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

124.     The members of the Rule 23 Florida Class are so numerous that joinder of all Rule 23 Florida Class members in this case would be impractical.

125.     Plaintiff reasonably estimates that there are hundreds of Rule 23 Florida Class members. Rule 23 Florida Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

126.     There is a well-defined community of interest among Rule 23 Florida Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Florida Class.

127.     These common legal and factual questions include, but are not limited to, the

following:

      a.     Whether Defendant was unjustly enriched by failing to pay Rule 23 Florida Class members for the pre-, mid-, and post-shift work tasks discussed herein; and

      b.     Whether the Rule 23 Florida Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof.

128.    Plaintiff's claims are typical of those of the Rule 23 Florida Class in that they and all other Rule 23 Florida Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

129.    Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Florida Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Florida Class members.

130.    Plaintiff will fully and adequately protect the interests of the Rule 23 Florida Class and she has retained counsel who are qualified and experienced in the prosecution of wage and hour class actions.

131.    Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Florida Class.

132.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Florida Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

133.    Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

134.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel

know of no unusual difficulties in this case and Defendant and their corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

135.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

136.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Florida Class and declaratory relief is appropriate in this case with respect to the Rule 23 Florida Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

137.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

138.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

139.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

140.    Plaintiff and the FLSA Collective, by virtue of their compensation method, job duties, and activities actually performed, are all non-exempt employees.

141.    Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

142.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and

20

the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

143.    At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than twenty (20) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

144.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

145.    Defendant's violations of the FLSA were knowing and willful.

146.    Defendant knew or could have determined how long it takes its BZAs to perform their off-the-clock work.

147.    Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

148.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Florida Class Action)**
**UNJUST ENRICHMENT**

149.    Plaintiff re-alleges and incorporate all previous paragraphs herein.

150.    Plaintiff and the members of the Rule 23 Florida Class performed work for Defendant's benefit.

151.    Defendant knowingly accepted the benefits of the work Plaintiff and the Rule 23

21

Florida Class performed.

152. At the time it accepted the benefits of the work, Defendant was aware that Plaintiff and the Putative Class expected to be paid a set pre-agreed upon rate for the work performed.

153. Defendant has retained the value of Plaintiff and the Rule 23 Florida Class's work under circumstances rendering such retention unjust.

154. Allowing Defendant to retain the value of the pre-, mid-, and post-shift uncompensated work Plaintiff and the Rule 23 Florida Class performed would unjust enrich Defendant.

155. Plaintiff, for herself and on behalf of the Rule 23 Florida Class, seeks the amount of the expected compensation withheld and such other legal and equitable relief this Court deems just and proper based on Defendant's unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf, on behalf of the putative FLSA Collective, and on behalf of the putative Rule 23 Florida Class requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Florida Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claim of unjust enrichment (Count II);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the Rule 23 Florida Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA collective action and the Rule 23 Florida Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendant violated the FLSA and the DOL's attendant regulations as

22

cited herein;

f.      Declaring Defendant's violation of the FLSA was willful;

g.      Declaring Defendant was unjustly enriched as explained herein;

h.      Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the collective action Class and the Rule 23 Florida Class the full amount of damages and liquidated damages available by law;

i.      Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

j.      Awarding other pre- and post-judgment interest to Plaintiff on these damages; and

k.      Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause of action.

Dated: October 23, 2025

23

Respectfully submitted,

**BURNS, DAY & PRESNELL, P.A.**

*s/ James J. Mills*
James J. Mills*, Esq.*
NC Bar No. 36529
2626 Glenwood Ave., Ste. 560, 27608
PO Box 10867, 27605
Raleigh, North Carolina
919.782.1441 (phone)
919.782.2311 (fax)
jmills@bdppa.com

**ASH LAW, PLLC**
Charles R. Ash, IV (*PHV Forthcoming*)
43000 W. 9 Mile Rd., Ste. 301
Novi, Michigan 48375
cash@nationalwagelaw.com

*Counsel for Plaintiff and the*
*Putative Collective/Class Members*

24